IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                        :    CHAPTER ELEVEN
                                              :
LEHIGH COAL AND NAVIGATION                    :    BANKRUPTCY NO.: 5-08-bk-51957
COMPANY,                                      :
                                              :
           DEBTOR                             :

# OPINION

Lehigh Coal and Navigation Company, Debtor, has filed a Motion authorizing sale as well as a request to approve bidding procedures. Objections to the bidding procedures have been filed, and, at the request of the Debtor, an expedited hearing was set and argument transpired. The Debtor has requested expedited disposition because of what is assumed to be the fragility of the Debtor's current situation.

The objections were filed by five entities including the United Mine Workers (in the form of a "limited answer"); Ciardi Advisory Services, as agent for a lending group; Primerock Capital, LLC, one of the investors in that lending group; the Committee of Unsecured Creditors; and Caterpillar Financial Services Corporation. While Ciardi withdrew its objection at the time of the hearing, it followed up with a limited reinstatement of its objection as a joinder to Primerock's objection. In fact, Primerock notified the Court by correspondence (Doc. #1006) that components of their original objection were resolved.

As mentioned, the Debtor is in a precarious position with the distinct possibility

that it may lose its principal assets at a state court sheriff's sale scheduled for mid-May, 2010. Without articulating it as such, the Debtor appears to have found a vehicle by which it can secure the services of an experienced marketeer, SSG Capital Advisors, in a manner that will be funded by a buyer (even if that buyer is a secured creditor) as opposed to the Debtor, which has no liquid funds.

The central challenge raised by Primerock Capital, LLC and Ciardi Advisory Services, LLC is whether the stalking horse bidder, BET Associates IV, LLC and BET Lehigh Real Estate, LLC has the right to credit bid obligations from the Debtor, free from the constraints of an investment agreement in which the bidder supposedly surrendered certain rights to act independent of the group.

In the recent Third Circuit Court of Appeals case of *In re Philadelphia Newspapers, LLC*, __F.3d __, 2010 WL 1006647 (C.A.3(Pa.)), the Court went some lengths to emphasize the import of the "plain meaning" rule in concluding that a Debtor can eliminate the "right" to credit bid as a part of a confirmed plan. 11 U.S.C. § 1129(b)(1). While acknowledging that the right to credit bid is not without limitations by virtue of the rather obvious proviso in § 363(k) that the right exists "unless the court for cause orders otherwise," the only cause enunciated at the hearing in this case was the agreement between nondebtors that certain benefits would be shared *pro rata*. See Exhibit to Doc. #991. It is not the Debtor that is seeking to eliminate the ability to credit bid, but another investor in the credit facility as well as the agent for the investment group, Ciardi. That creditor, Primerock, cites to *In re Electroglas, Inc.*, (Delaware

bankruptcy 09-12416) as authority to deny the creditor the right to credit bid by reason of limitations in the noteholders' agreement. The *Electroglas* opinion pays deference to the literal language of § 363(k), but concludes that there was a likelihood of "confusion" should a noteholder act separate and apart from the group. Two points are to be taken from that case. First, the issue arose at the time of the hearing on the sale and not, as here, preliminary to the actual sale hearing. Second, no evidence has been introduced that there would be the least confusion should BET be the successful bidder. I note that the agency agreement in the case before me is replete with provisions that the investors would hold certain recoveries in trust for the group, suggesting that individual action was likely anticipated.

In short, the objectors did not suggest that the stalking horse is not qualified to bid as a holder of an allowed claim secured by a lien under § 363(k). Their argument is that individual action would subject that creditor to exposure to fellow noteholders.

On the assumption that BET is a holder of an allowed claim secured by a lien on the subject matter of the sale, I will follow the literal terms of the statute and approve the efforts of BET to credit bid.

It is a unique situation where a secured creditor bears the nomenclature of a stalking horse when, presumably, it could achieve a similar, and possibly less expensive disposition by simply setting an upset price at a state court creditor's sale. There are dynamics here that the Court certainly appreciates. Apart from the fragility of the Debtor's reorganizational efforts, unquestionably there exists significant environmental

concerns that will saddle any new owner of the premises.

The outlook looks grim on a number of levels, albeit a debtor, creditor, or a societal perspective.

The hearing on the bidding procedure consisted solely of legal argument which constricts my ultimate findings.

I next address the Committee's objection. The Committee was lukewarm in advancing its arguments, one of which is easily resolved. First, the Committee objected to provisions that would close or limit information to a few participants. I appreciate this objection and would propose to issue an Order to open the proceedings to others upon application of an interested party and showing of cause.

The Committee objects to a required deposit, currently at $400,000, from potential bidders, the sales fee payable to the investment banker, and the initial bidding increment, now set at $200,000. Apart from a bald statement that these numbers were recommended by SSG, who was present and available to testify at the hearing, the Court has no evidence that such amounts are unreasonable.

In regard to the provision allowing expense reimbursement and the objections thereto, I am aware that it is Movant's (Debtor's) burden to demonstrate that expense reimbursement to the stalking horse is an "actual, necessary" expense of "preserving the estate." *In re Reliant Energy Channelview*, *LP*, 594 F.3d 200, 206 (3rd Cir. 2010). I have been given no information to make that finding. In fact, this item appears to be of marginal concern to BET, as argued at the hearing. The expense appears to be a necessary

expenditure by any proposed owner, including the lienholder, whether they be a bidder at sale, or a creditor foreclosing on an interest. In the absence of proof of necessity, that request for expense reimbursement is denied.

As to other elements of the bidding procedure, while the record is sparse, these elements appear to have the support of SSG, who is charged with "moving" this property in a short window. I see little reason to interfere with these details.

The issues addressed appear to dispose of all significant concerns raised by the objectors.

The Order that follows was submitted by the Debtor after extensive negotiations with the Objectors. To the extent that this Order conflicts with these findings and conclusions, these findings and conclusions will supersede the language of the Order.

By the Court,

Date: April 2, 2010

John J. Thomas, Bankruptcy Judge
(CMS)

*This opinion is electronically signed and filed on the same date.*