IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| | : | |
| LEHIGH COAL AND NAVIGATION | : | BANKRUPTCY NO.: 5-08-bk-51957 |
| COMPANY, | : | {**Nature of Proceeding**: Remand Issue |
| | : | per Order #1387} |
| DEBTOR | : | |

# **OPINION**

The remand of the proceeding from the District Court is best discussed after a chronological review of the background that brings us here.

The Debtor, Lehigh Coal and Navigation Company, is a producer of anthracite coal with significant mineral and land holdings in Northeastern Pennsylvania. The United States Department of Agriculture (USDA) extended two loans to Lehigh in February of 2002, with Lehigh granting to USDA liens on certain chattel property and a mortgage interest in the surface only of Lehigh's property. The loans totaled $9,000,000. Various economic and environmental problems led to Lehigh's Chapter 11 bankruptcy filing on July 15, 2008. During its reorganizational efforts, the Debtor negotiated a financing vehicle through BET Associates IV, LLC. In August 2009, when Lehigh sought to secure postpetition financing through its DIP lender, BET, the USDA liens were primed, but not without first granting to USDA an additional lien in Lehigh's mineral rights. This was implemented under the mandate of *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 567 (3d Cir. 1994), requiring a secured lender some measure of adequate protection should their collateral be impaired. This additional financing allowed Lehigh to continue to operate, but reorganizing as an operational entity still eluded the Debtor. After some period of time struggling to gain economic viability, the Debtor saw, as its

only option, a sale of virtually all its property. Despite significant efforts in this regard, no buyer could be found. Eventually, the Debtor turned to its principal lender to serve as the "stalking horse." The stalking horse bid was somewhat unusual since it would be advanced as a credit bid in the hope that a higher bidder would be encouraged to make an offer. Because that higher bidder was not forthcoming, the bulk of the Debtor's assets were sold to BET Associates, free and clear of liens.

As the parties to this transaction are aware, an appeal to the District Court was taken by the USDA, whose lien was eliminated from the property transferred. The appeal was successful, in part, inasmuch as the District Court affirmed the sale, but remanded the matter back to the Bankruptcy Court to allow the Bankruptcy Court an opportunity to make adequate findings and conclusions regarding a provision in the sale order holding that the USDA was "adequately protected by having their Encumbrances, if any, attach to the proceeds of the sale of the assets ultimately attributable to the property against or in which they hold or claim any Encumbrances." Doc. #1111 ¶ R, at 6. As the District Court observed, there were no proceeds of the sale to be so attached. *USA, USDA v. BET Associates IV, LLC, et al.*, No. 3:10-cv-1440, slip op. at 8 (D. Pa. May 4, 2011). See Doc. #1387.

The District Court was able to uphold the sale while questioning the adequacy of the protection afforded the USDA as lienholder because the District Court embraced the holding of a Bankruptcy Appellate Panel that concluded that, while a stay of an order authorizing a sale must be obtained in order to disturb the validity of a sale, no stay is necessary to preserve the rights of a lienholder whose lien was improperly stripped. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir.BAP 2008).

On a less subtle note, the remand mandates that the Bankruptcy Court "make proper findings and . . . dispose of USDA's request for adequate protection" while acknowledging that "the bankruptcy court's previous grant of adequate protection may still be sufficient." Doc. #1387 at 8. Nonetheless, the District Court found that "the bankruptcy court clearly erred in finding that the USDA could be adequately protected by having its encumbrances attach to the proceeds of the § 363 sale" where there were no proceeds. *Id.* This is a direction that fundamentally alters the Bankruptcy Court's original conclusions. The decision of the Bankruptcy Court that USDA was adequately protected is essentially founded on the premise that a free and clear bankruptcy sale can be had should there be compliance with the statutory conditions identified in 11 U.S.C. § 363(f). If any one of the conditions set forth in that subsection is present, the secured creditor presumably possesses the adequate protection referenced in § 363(e).

Section 363(f)(3) stands for the premise that a property could be sold, free and clear of liens, if the price for which it was sold is greater than the "aggregate value" of all liens on such property. Some time ago, in *In re Milford Group, Inc.*, 150 B.R. 904, 906 (Bankr. M.D.Pa. 1992), I concluded that the "value of all liens" referenced in § 363(f)(3) meant the value of collateral, rather than the value of all debts against the property. If the value of those liens was based on the value of the collateral, under the rationale of *Milford*, an undersecured creditor would have little more than unsecured status for the amount its lien exceeded the value of collateral. Therefore, a secured creditor which receives nothing for the undersecured portion of its debt is likely "adequately protected" as that term is used in § 363(e). On the other hand, if the "aggregate value of all liens" is based on the face amount of the lien, then, regardless of the

value of the collateral, a free and clear sale under this subsection could not take place without paying off the liens in full. This is a holding of *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir.BAP 2008), the principal case relied on by the District Court. These two points of view represent a general split amongst the courts on this issue. See generally, Daniel J. Carregher, *Sales Free and Clear: Limits on § 363(f) Sales*, 26 Am. Bankr. Inst. J. 16 (Aug. 2007).

On page 8 of the District Court opinion, the matter was remanded to make "adequate findings of fact and conclusions of law showing that USDA continues to be adequately protected." In that regard, I was invited to conduct further proceedings and receive additional evidence. Doc. #1387 at 8. While offered that opportunity, the parties have chosen to offer no additional evidence. See audio record of 9/20/2011.

To the extent these findings and conclusions are requested, I so find as follows, supported by the original record.

On August 9, 2009, when the Debtor in possession lender received a superpriority claim pursuant to § 364, I concluded that the USDA was adequately protected based on the combination of the following three factors: "(a) the existing equity cushion in the Debtor's assets; (b) the Debtor's proposal to make monthly payments of interest to the USDA; and (c) the grant of a lien to the USDA in the Debtor's mineral rights, in which the USDA previously did not have a security interest." Doc. #711 ¶ J, at 4. The USDA is entitled to continued adequate protection, notwithstanding the attempt by the Debtor to sell the property free and clear of liens. 11 U.S.C. § 363(e). In order to do so, at least one of the conditions of subsection § 363(f) must be met. Only two of those subsections appear to be applicable and that is § 363(f)(3) and (5).

Such section reads:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if– . . .
>     (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; . . .
>     (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C.A. § 363

As the record will suggest, the assets of the Debtor generated no higher offers over those of the stalking horse after a rather significant marketing effort. The apparent conclusion is that the value of the Debtor's assets rose no higher than the credit bid of the lienholder and eventual purchaser.

Additionally, BET advanced that, as a lienholder, they had the ability to foreclose/execute against this same property in state court and divest the USDA lien in the same manner, thus fitting within the parameters of § 363(f)(5). A learned treatise succinctly explains the mechanics of this disposition:

> The ability to cleanse a debtor's assets of liens can make such property more attractive to potential purchasers and may increase the sales price. Courts have long approved the sale of assets free and clear of liens when the purchase price of the property exceeded the amount of the liens against the property based on the fact that the lien holder would not be harmed and the debtor's equity interest in the property could generate a benefit for the debtor's unsecured creditors.
>     Courts are split, however, regarding whether Code § 363(f)(3), the section authorizing a free and clear sale when the sale price of the property exceeds the aggregate value of the liens, authorizes the sale of overencumbered property. The ambiguity stems from the reference to the aggregate "value" of the liens, not the face value or amount of the liens. There is some authority for the proposition that because Code § 506(b) provides for the valuation of liens by splitting a secured claim into secured and unsecured components, the value of the property will always equal or exceed the value of the secured claims on such property. Under this line of analysis a court could approve a free and clear sale pursuant to Code § 363(f)(3) even where the amount of the claims against the property exceeded the

> purchase price.
> Another argument is to allow the sale under § 363(f)(5). That subsection permits a sale when the lienholder "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Since a junior lienholder could be compelled to accept a money satisfaction of its lien under a foreclosure sale or a receivership, an undersecured creditor arguably could be stripped of its interest that exceeds the value of the property being sold under § 363(f).

2 William L. Norton, Jr., Norton Bankruptcy Law & Practice 3d § 44:24 (2011) (footnotes omitted)

This synopsis sets forth the explanation why I felt justified in allowing the sale of the property free and clear of the USDA lien, since the "value" of the property did not support a disbursement of funds to that entity.

Having laid my rationale out, I note the District Court direction that the absence of proceeds going to the USDA negated a finding that it was adequately protected. Doc. #1387 at 8. This is an implicit finding that rejects *Milford* and accepts the holding of *Clear Channel* that adequate protection, under these circumstances, requires that the USDA be compensated in some fashion, or the free and clear aspect of the sale be rejected. If this were mere dicta, I may be free to ignore it. *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n. 6 (3d Cir. 2003) ("[d]icta statements are not binding law of the case.") I find, however, that the District Court's following statement was a fundamental element of the remand, i.e., "the bankruptcy court clearly erred in finding that the USDA could be adequately protected by having its encumbrances attach to the proceeds of the § 363 sale, where the bankruptcy court failed to find that proceeds were generated and the record evidence establishes that none were generated." Doc. #1387 at 8. *St. Thomas-St. John Hotel & Tourism Ass'n Inc. v. United States*, 357 F.3d 297, 301 (3d Cir. 2004) ("the law of the case doctrine bars courts from reconsidering matters actually decided"). Since the sale has been

affirmed, reversal of the sale is not possible at this time. My option, indeed my only alternative on remand, is to allow the lien to remain attached to the property conveyed and have the current owner of the property deal with it.

While the issue is not now before me, this disposition obviously alters the equities of the original transfer and potentially subjects the sale order to Federal Rule of Bankruptcy Procedure 9024 consideration.

My Order will follow.

By the Court,

Date: January 5, 2012

John J. Thomas, Bankruptcy Judge
(CMS)